**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2515
_____

JAMES LE CARRE, individually and as Administrator and Administrator
ad Prosequendum of the Estate of Alexander Olin; ESTATE OF ALEXANDER OLIN

v.

ALLIANCE HC II LLC, d/b/a Andover Subacute and Rehabilitation II, d/b/a Woodland
Behavioral and Nursing Center; CHAIM SCHEINBAUM;
LOUIS SCHWARTZ; ANDOVER SUBACUTE AND REHABILITATION II;
WOODLAND BEHAVIORAL AND NURSING CENTER; JANE DOE
NURSES 1–50; JANE DOE NURSES; TECHNICIANS; CNAS AND
PARAMEDICAL EMPLOYEES 1–50; JOHN DOE PHYSICIANS 1–50;
RICHARD DOES 1–10; JANE DOE DIETICIANS 1–50;
ABC CORPORATION AND ABC PARTNERSHIP,

Alliance HC II LLC d/b/a Woodland Behavioral and Nursing Center
f/d/b/a Andover Subacute and Rehabilitation II (i/p/a separate entities,
Andover Subacute and Rehabilitation II, Woodland Behavioral and
Nursing Center); Chaim Scheinbaum; and Louis Schwartz,
                                                              Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-21-cv-20226)
District Judge: Honorable Michael A. Shipp
_____

No. 22-3321
_____

PASQUALE IANNUZZELLI, individually; ESTATE OF ELIZABETH
IANNUZZELLI, Pasquale Iannuzzelli as General Administrator
and Administrator ad Prosequendum of the Estate

v.

ALLIANCE HC II LLC, d/b/a Andover Subacute and Rehabilitation II,
d/b/a Woodland Behavioral and Nursing Center; WOODLAND
BEHAVIORAL AND NURSING CENTER; ANDOVER SUBACUTE
AND REHABILITATION II; CHAIM SCHEINBAUM; LOUIS SCHWARTZ;
JANE DOE NURSES 1–50; JANE ROE NURSES, TECHNICIANS,
CNAS AND PARAMEDICAL EMPLOYEES 1–50; JOHN DOE PHYSICIANS
1–50; RICHARD ROES 1–10; JANE DOE DIETICIANS 1–50; ABC
CORPORATION AND ABC PARTNERSHIP (the aforesaid names being
fictitious and their true names being unknown),

Alliance HC II LLC d/b/a Andover Subacute and Rehabilitation II,
d/b/a Woodland Behavioral and Nursing Center; Woodland Behavioral
and Nursing Center; Andover Subacute and Rehabilitation II;
Chaim Scheinbaum; and Louis Schwartz,
                                                    Appellants

————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-22-cv-04473)
District Judge: Honorable Michael A. Shipp

————————

No. 22-3322

————————

PATRICIA A. FIORE; JOHN P. FIORE

v.

ALLIANCE HC II LLC, d/b/a Andover Subacute Rehabilitation II,
d/b/a Woodland Behavioral and Nursing Center; WOODLAND
BEHAVIORAL AND NURSING CENTER; ANDOVER SUBACUTE
AND REHABILITATION II; CHAIM SCHEINBAUM; LOUIS SCHWARTZ;
JANE DOE NURSES 1–50; JANE ROE NURSES, TECHNICIANS,
CNAS AND PARAMEDICAL EMPLOYEES 1–50; JOHN DOE PHYSICIANS
1–50; RICHARD ROES 1–10; JANE DOE DIETICIANS 1–50; ABC
CORPORATION AND ABC PARTNERSHIP (the aforesaid names being
fictitious and their true names being unknown),

Alliance HC II LLC d/b/a Andover Subacute and Rehabilitation II,
d/b/a Woodland Behavioral and Nursing Center; Woodland
Behavioral and Nursing Center; Andover Subacute
and Rehabilitation II; Chaim Scheinbaum; and Louis Schwartz,

                                                      Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-22-cv-04474)
District Judge: Honorable Freda L. Wolfson

_____

No. 23-1807

_____

SUSAN M. MOOR, individually;
ESTATE OF JOHN J. WATTERS, Susan M. Moor
as General Administrator and Administrator ad Prosequendum of the Estate

v.

ALLIANCE HC II LLC, d/b/a Andover Subacute Rehabilitation I,
d/b/a Woodland Behavioral and Nursing Center;
WOODLAND BEHAVIORAL AND NURSING CENTER;
ANDOVER SUBACUTE AND REHABILITATION II; CHAIM SCHEINBAUM;
LOUIS SCHWARTZ; JANE DOE NURSES 1–50; JANE ROE NURSES,
TECHNICIANS, CNAS AND PARAMEDICAL EMPLOYEES 1–50; JOHN DOE
PHYSICIANS 1–50; RICHARD ROES 1–10; JANE DOE DIETICIANS 1–50;
ABC CORPORATION AND ABC PARTNERSHIP (the aforesaid names being
fictitious and their true names being unknown),

Alliance HC II LLC d/b/a Woodland Behavioral and Nursing Center
f/d/b/a Andover Subacute and Rehabilitation II (i/p/a separate entities,
Andover Subacute and Rehabilitation II, Woodland Behavioral and
Nursing Center); Chaim Scheinbaum; and Louis Schwartz,

                                                      Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-22-cv-04472)
District Judge: Honorable Georgette Castner

3

Submitted Under Third Circuit L.A.R. 34.1(a)
February 8, 2024

Before: HARDIMAN, SCIRICA, and RENDELL, *Circuit Judges*.

(Filed: February 16, 2024)

OPINION[*]

HARDIMAN, *Circuit Judge*.

In these four consolidated cases, entities and individuals associated with a New Jersey nursing home (collectively, Alliance) appeal the orders of three judges of the United States District Court for the District of New Jersey. All three judges remanded to state court personal injury actions brought by the legal representatives of nursing home residents who died from COVID-19. We will affirm.

I

While living in a nursing home operated by Alliance, Alexander Olin, Elizabeth Iannuzzelli, John Fiore, and John Watters contracted COVID-19 and tragically died. Each of the decedents' estates (the Estates) sued Alliance in New Jersey state court. The Estates alleged state statutory violations, medical malpractice, negligence, and gross negligence based on Alliance's failure to properly use and sanitize personal protective

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

equipment and provide adequate medical care. Alliance sought to remove the actions to federal court. After the Estates successfully moved to remand the cases to state court, Alliance timely appealed.

## II[1]

As in the District Court, Alliance now cites three bases for jurisdiction: (1) complete preemption under the Public Readiness and Emergency Preparedness (PREP) Act, (2) the existence of an embedded substantial federal question under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), and (3) federal officer removal doctrine. For the reasons that follow, we hold that these arguments are foreclosed by our reasoning in *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021).

### A

"The PREP Act provides 'an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by *willful misconduct*.'" *Id.* at 401 (emphasis added) (quoting 42 U.S.C. § 247d-6d(d)(1)). As we emphasized in *Maglioli*, willful misconduct is "a separate cause of action from negligence." *Id.* at 411. Because "we must look beyond the [Estates'] claims," "[t]he question is whether [the Estates'] allegations . . . *could have* been brought" under the statute. *Id.* (cleaned up).

---

[1] We have appellate jurisdiction under 28 U.S.C. § 1447(d) because these cases were removed under the federal officer removal statute, and we can review all grounds raised for removal. *BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532, 1538 (2021). "We review issues of subject-matter jurisdiction de novo, including a court's decision to remand for a lack of jurisdiction." *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 403 (3d Cir. 2021) (cleaned up).

Alliance argues that the Estates pleaded "allegations of willful misconduct that substantially duplicate the elements of a willful misconduct claim under the PREP Act . . . :

> (1) 'an act or omission that is taken';
> (2) 'intentionally to achieve a wrongful purpose;'
> (3) 'knowingly without legal or factual justification; and'
> (4) 'in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit.'"

Alliance Br. 26 (quoting 42 U.S.C. § 247d-6d(c)(1)(A)); *see also* Alliance Consol. Br. 34.[2] For example, Alliance describes the Estates as alleging that "Andover knew COVID-19 was highly contagious and deadly and that its residents were at a greater risk of contracting COVID-19, yet consciously disregarded the health and safety of its residents." Alliance Br. 26–27 (citing App. 59, 70–71, 76, 78, 87, 90, 92, 94–95, 97, 100–02); *see also* Alliance Consol. Br. 35–36. Similarly, according to Alliance, the Estates "allege[d] that Andover acted 'intentionally' to achieve the wrongful purpose of increasing profits over patient safety." Alliance Consol. Br. 35 (citing Consol. App. 103, 113, 144, 221, 230–31, 261, 338, 347–48, 379); *see also* Alliance Br. 28.

Alliance's characterizations are mistaken, largely for the reasons stated by the District Court. "Adding conclusory adverbs to allegations does not morph a negligence action into one for willful misconduct." App. 10 (Shipp, J., Case No. 22-2515). Willful misconduct is "construed as establishing a standard for liability that is *more stringent*

---

[2] On appeal, Alliance filed two briefs, one for Case No. 22-2515 and one for Case Nos. 22-3321, 22-3322, and 23-1807. We refer to the former as "Alliance Br." and the latter as "Alliance Consol. Br." In the same manner, Alliance filed two appendices, which we refer to as "App." and "Consol. App."

than a standard of negligence in any form or recklessness." 42 U.S.C. § 247d-6d(c)(1)(B) (emphasis added). *See also* Consol. App. 32 (Wolfson, J., Case No. 22-3322) ("[T]he Complaint does not assert a claim for 'willful misconduct,' nor do [the Estates] represent any differently in their briefing."); App. 44 (Castner, J., Case No. 23-1807) ("[The Estates'] use of 'willful' and 'intentional' relate to [the Estates'] claim of gross negligence and [Alliance's] alleged breach of a duty to provide proper care."). Like the District Court, we cannot infer from vague and imprecise references to "intentional" or "conscious" conduct that the Estates' complaints alleged that Alliance had acted "intentionally to achieve a wrongful purpose" or "knowingly without legal or factual justification." 42 U.S.C. § 247d-6d(c)(1)(A)(i), (ii). Therefore, the Estates could not have asserted a willful misconduct claim under the PREP Act. So the statute does not preempt their state law claims and cannot confer jurisdiction in this case.

B

Under the federal officer removal statute, federal courts have jurisdiction over civil actions directed at "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). In *Maglioli*, we rejected the contention that nursing homes act under federal officers merely by complying with federal rules and regulations. *See* 16 F.4th at 404. We instead reasoned that nursing homes must be involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of [a] federal superior." *Id.* at 404–05 (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007)). Attempting to distinguish these cases from *Maglioli*,

7

Alliance argues that the Estates allege "facts demonstrating it was the federal government's obligation to address the spread of COVID-19 in nursing homes," specifically that "[t]he National Guard and the New Jersey Department of Health assisted in Andover's operations to address the COVID-19 outbreak at Andover." Alliance Br. 63 (citing App. 69–70, 73–74, 125–26); *see also* Alliance Consol. Br. 71–72. But this allegation no more shows that Alliance has been "delegated federal authority" or "provide[s] a service that the federal government would otherwise provide" than the arguments it proffered in *Maglioli*. 16 F.4th at 405. So we lack jurisdiction under the federal officer removal statute for the same reason we articulated in *Maglioli*.

C

"[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Alliance argues that federal preemption is "necessarily raised" in the Estates' complaints. But because this federal defense "does not appear on the face of" those complaints, it "does not authorize removal to federal court." *Maglioli*, 16 F.4th at 413 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).

\* \* \*

Alliance's attempts to sidestep *Maglioli* are unpersuasive at best. And to the extent they recycle, often verbatim, arguments we have already rebuffed, they border on improper. We again reject Alliance's attempt to transform "garden-variety state-law claims" into a federal case. *Id.* We will affirm.

8